UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM R. PHILLIPPI,

       Plaintiff,                           Civil Action No. 13-10437

v.                                  HON. BERNARD A. FRIEDMAN
                                  U.S. District Judge
                                  HON. R.   STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff William R. Phillippi ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

_____

[1]The Court has determined that oral argument is unnecessary.

–1–

On December 8, 2009, Plaintiff filed an application for DIB, alleging disability as of December 14, 2004 (Tr. 101-103).   After the initial denial of the claims, Plaintiff filed a request for an administrative hearing, held on February 10, 2011 in Chicago, Illinois before Administrative Law Judge ("ALJ") Ayrie Moore (Tr. 34).   Plaintiff, represented by attorney Lewis Anderson, testified (Tr.  40-70).   On March 24, 2011, Vocational Expert ("VE") Richard Szydlowski offered responses to vocational interrogatories (Tr. 161-166). On August 17, 2011, ALJ Moore determined that Plaintiff was not disabled on or before the last day insured for DIB of December 31, 2008 (Tr. 30).   On December 18, 2012, the Appeals Council denied review (Tr. 2-7).   Plaintiff filed for judicial review of the Commissioner's decision on February 4, 2013.

## BACKGROUND FACTS

Plaintiff, born April 12, 1972, was 39 at the time of the administrative decision (Tr. 30, 101).   He left school after completing ninth grade (Tr. 130).   He worked previously as  laborer, shipping clerk, and welder (Tr. 126).   His application for benefits alleges disability as a result of a knee injury requiring two surgeries and spinal disc injuries (Tr. 125).

### A.    Plaintiff's Testimony

*The ALJ prefaced the testimony by stating that Plaintiff was required to establish disability on or before the "date last insured" of December 31, 2008* (Tr. 37-38).

Plaintiff offered the following testimony:

He lived with his wife and fourteen-year-old stepson in a two-story house (Tr. 40).

–2–

He held a current driver's license and was able to drive (Tr. 40).   He left school after 11th grade but later completed a GED (Tr. 41).   Prior to the hearing, he received a settlement from Workers' Compensation for injuries sustained at work on December 14, 2004 (Tr. 41).   He had not worked since that date (Tr. 42).   At the time he was injured, he was working as a welder (Tr. 42).   The position required him to lift up to 100 pounds (Tr. 42). After being "hunched over" for 10 hours on the day of the injury, he heard his back "pop" upon standing (Tr. 42).   He received treatment between December, 2004 and August, 2009 from a spine and joint rehabilitation doctor, but was currently unable to obtain medical care due to lack of insurance (Tr. 43).   He experienced neck pain as well as back pain (Tr. 43).   As of December 31, 2008, he experienced level "seven" back pain and level "three" neck pain (on a scale of one to ten) approximately 75 percent of the time (Tr. 43). His back pain was concentrated in the lumbar area (Tr. 44).   The pain interfered with his ability to lift, bend, twist, and stand for extended periods (Tr. 44).   He was unable to lift more than 15 pounds (Tr. 45).   He had not sought emergency treatment or hospitalization for the back condition (Tr. 45).   He declined to undergo spinal surgery after learning that the success rate was only "50/50" (Tr. 45).   He underwent two right knee surgeries in 2001, but denied knee pain during the relevant period (Tr. 44).

Plaintiff stated that steroid injections administered in July, 2006 did not improve his condition, but he experienced temporary relief from Vicodin and Lyrica (Tr. 49).   He experienced the side effect of drowsiness from the pain medication (Tr. 49).   He experienced only temporary relief from physical therapy (Tr. 50).   He denied emotional

problems affecting his ability to work (Tr. 51).

He reiterated that prior to the December, 2008 expiration of DIB, he could lift up to 15 pounds (Tr. 52).   He was unable to "sit in one position for too long," but was able to obtain relief by shifting his position while staying seated (Tr. 52).   He was able to sit or stand for up to half and hour and walk for up to 20 minutes (Tr. 53).   He did not experience upper extremity limitations (Tr. 53).   He experienced "burning" down the back of his left leg as a result of a pinched nerve (Tr. 53).   He smoked a pack of cigarettes each day but did not experience breathing problems (Tr. 54).   He experienced stress as a result of "not knowing when or if" his back would improve, but did not experience concentrational problems or problems interacting with friends, neighbors, coworkers, or supervisors (Tr. 54).   His former neurologist opined that Plaintiff was unable to twist or bend (Tr. 56).

Plaintiff experienced sleep disturbances as a result of back pain but was able to perform light household chores, attend to personal needs, and take short walks (Tr. 57-58).   Due to sleep disturbances, he reclined during the day (Tr. 57-58).   He visited with friends, "weather permitting" and received guests in his home (Tr. 59).   He played video games with his stepson (Tr 60).   He used alcohol but denied the use of illegal drugs (Tr. 60).   He was unable to lift 15 pounds more than once a day and could only lift five pounds frequently due to the potential for back "irritation" (Tr. 62).   He stated that he experienced an exacerbation of back pain approximately four months before the hearing after lifting and carrying a number of "heavier" garbage bags (Tr. 62).   He denied the use of psychotropic medication (Tr. 63).

–4–

*After the conclusion of the testimony, Plaintiff's attorney argued for a determination that his client was disabled under "Listing" 1.04A or, was limited to only sedentary work (Tr. 68-71).*

**B.    Medical Evidence**[2]

### 1.   Treating Sources

An x-ray of the lumbar spine taken two days after Plaintiff's December 14, 2004 accident was unremarkable (Tr. 251).   Later the same month, rehabilitation expert Judy A. Macy, M.D. noted Plaintiff's complaints of lower back pain radiating into his left thigh (Tr. 232). She ordered an MRI of the lumbar spine and advised him to continue physical therapy (Tr. 232).   The following month, she noted recent MRI results showing disc protrusions at L4-5 and L5-S1 (Tr. 231, 250).   She prescribed Vicodin, along with glucosamine, gelatin, and multivitamins (Tr. 231).     In February, 2005, Dr. Macy noted that Plaintiff's progress had been "excellent . . . thus far" but that he should "look for a lighter line of work" (Tr. 230).   A March, 2005 MRI of the cervical spine showed a disc protrusion at C6-C7 creating moderate effacement of the thecal sac (Tr. 194).   Notes from the same month state that Plaintiff currently took Vicodin for cervical and lumbar back pain (Tr. 196, 229). In April, 2005, Dr. Macy's notes show that Plaintiff reported continued pain, but continued to improve (Tr. 228).

---

[2]Medical evidence unrelated to the application for benefits, while reviewed in full, has been omitted from discussion.

She reiterated that he should find a job that did not "involve heavy repetitive bending and lifting" (Tr. 228). She encouraged him to continue with a home exercise program (Tr. 228). In June, 2005, she advised Plaintiff to "look into job retraining in the future" (Tr. 226). In October, 2005, Dr. Macy re-prescribed Vicodin and encouraged him to increase his physical therapy (Tr. 222). Dr. Macy's notes from the following month state that Plaintiff believed that he was unable to work due to the inability to "bend and twist" (Tr. 221). In December, 2005, she prescribed extra strength Vicodin (Tr. 273).

In January, 2006, neurologist James D. Colson, M.D. examined Plaintiff, noting complaints of "7/10" pain and sleep disturbances (Tr. 203). Dr. Colson observed that the MRI taken two weeks after the December, 2004 accident showed a disc protrusion with thecal sac compression at L4-5 and L5-L1 but no stenosis (Tr. 203-204). A "straight leg raise" test was positive bilaterally in "sitting and supine positions" (Tr. 204). Dr. Colson recommended "a more active physical therapy regimen," more stretching, and steroid injections (Tr. 205). In April, 2006, Dr. Colson advised against surgery but recommended that Plaintiff obtain a second opinion (Tr. 260). The same month, he received "nerve block" injections to the lumbar spine (Tr. 265). Dr. Macy's March, 2006 records state that Plaintiff did not experience significant improvement from recent steroid injections (Tr. 272). Dr. Macy's May, 2006 records state that Plaintiff was making "excellent" progress in physical therapy, also noting a recent recommendation against surgery by neurologist Stanley Lee, M.D. (Tr. 254, 257-258). In July, 2006, Dr. Colson reiterated that Plaintiff was not a good surgical candidate, but noted that Plaintiff had requested higher dosages of opiates (Tr. 263). An MRI of the lumbar spine from the same month showed a disc

protrusion at L5-S1 "causing acquired spinal stenosis" (Tr. 328).   In August, 2006, Dr.
Macy "discouraged" Plaintiff from sitting over 15 minutes at a time (Tr. 252).   Dr. Macy's
October, 2006 treating notes state that Plaintiff wanted to proceed with the surgery
recommended by Geoffrey M. Thomas (Tr. 295, 330-331).   The following month, Dr.
Macy opined that Plaintiff should not perform any work requiring bending or prolonged
standing (Tr. 294).

In March, 2007, Dr. Macy's records state that Plaintiff's back surgery was abruptly
cancelled by his insurer (Tr. 292).   She recommended continued physical therapy (Tr.
292).   May, 2007 treating notes state that Plaintiff was depressed about the possibility of
taking a "buyout" from Workers' Compensation which he believed would prevent him
from getting his back "fixed" (Tr. 291).   August, 2007 treating notes state that Plaintiff
continued to experience good results from therapy (Tr. 288).   In December, 2007, Dr.
Macy observed that Plaintiff experienced difficulty arising from a seated position (Tr.
284).

A November, 2008 MRI of the lumbar spine showed a moderate disc bulge at L4-L5
creating mild stenosis and thecal sac compression (Tr. 300, 350, 364).   A moderate disc
bulge at L5-S1 did not "narrow the thecal sac" showing improvement from an earlier study
(Tr. 300-301).   The same month, Geoffrey M. Thomas, M.D. found that Plaintiff was a
good candidate for lumbar fusion surgery (Tr. 305, 368).   In February, 2009, an EMG
study showed evidence of radiculopathy affecting the nerve root at L4 and L5 (Tr. 309,
356, 370).   The same month, Plaintiff estimated his current back pain at 3/10 but noted

–7–

that it ranged from 2/10 to 10/10 (Tr. 316, 358).   He exhibited 4/5 strength in the left lower extremity and 5/5 elsewhere (Tr. 317).   In April, 2009, Dr Macy noted Plaintiff's report that he was unable to stand for more than 15 minutes at a time (Tr. 313).   She recommended an increase in physical therapy (Tr. 313).

### 2. Non-Examining Sources

In March, 2011, Ashok Jilhewar, M.D. performed a non-examining review of Plaintiff's treating records, finding that he could lift and carry up to 10 pounds on a frequent basis; sit or stand/walk for up to one hour at a time; sit for six hours in an eight-hour workday; and stand/walk for two (Tr. 335-336).   She found that Plaintiff was limited to occasional reaching overhead, but could reach, handle, finger, feel, or push on a frequent basis (Tr. 337).   She determined that Plaintiff could operate foot controls frequently with the right foot and occasionally with the left (Tr. 337).   She precluded all kneeling, crouching, crawling, and the climbing of ladders or scaffolds but found that Plaintiff could balance and stoop on an occasional basis (Tr. 338).   As to environmental limitations, she found that Plaintiff should avoid all unprotected heights with *occasional* only exposure to moving parts, operating motor vehicles, and vibration; and *frequent* (as opposed to constant) exposure to humidity, fumes, temperature extremes, and noise to a frequent basis (Tr. 339).   She found no limitations in activities of daily living (Tr. 340). She found that Plaintiff did not meet "Listing 1.04A" (Tr. 343).

### C.   Vocational Testimony

On March 24, 2011, VE Richard K. Szydlowski responded to interrogatories

2:13-cv-10437-BAF-RSW   Doc # 16   Filed 02/10/14   Pg 9 of 20   Pg ID 482

propounded by ALJ Moore (Tr. 161-166). He classified Plaintiff's former job as a metal fabricator as skilled and exertionally heavy; hand packager, unskilled/medium; groundskeeper, semiskilled/medium; and construction worker, unskilled/heavy[3] (Tr. 161). The ALJ propounded the following interrogatory to the VE, taking into account Plaintiff's age, education, and work background in describing the limitations of a hypothetical individual:

> [L]ight work . . . involving no climbing ladders, ropes or scaffolds, kneeling, or crouching; no bending from waist level to the floor level; and no repetitive twisting (Tr. 162).

The VE testified that the hypothetical limitations would preclude all of Plaintiff's former jobs, but would allow the individual to perform the light, unskilled work of a receptionist/greeter (74,310 positions in the national economy); and inspector/checker (69,890). He testified further that if the above-limited individual were further restricted to "simple, routine, work tasks, it would not change the job findings (Tr. 163).

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

–9–

In response to further questioning, the VE found that an individual of Plaintiff's age, education, and work background limited to "sedentary work . . . involving no climbing ladders, ropes or scaffolds, kneeling, or crouching; no bending from waist level to the floor level; and no repetitive twisting" with a restriction of "simple, routine work tasks" could perform the unskilled sedentary jobs of order clerk (227,190) and final assembler (239,350) (Tr. 164-166).

The following month, Plaintiff's counsel posed a hypothetical question in the form of an interrogatory to the VE asking him to consider the following limitations:

> [T]he individual can only sit at one time without interruption for a period of one hour, that the individual can only stand or walk at one time without interruption for a period of one hour, that the individual can only sit a total of 6 hours out of an 8 hour workday, that the individual can only stand or walk a total of 2 hours out of an 8 hour workday, that the individual can only occasionally reach overhead (Tr. 175).

On May 24, 2011, the VE responded that the above limitations were consistent with the requirements of sedentary work and would not change his job findings (Tr. 166, 175). The VE stated that if the same individual were also precluded from climbing all ladders or scaffolds, kneeling, crouching, or crawling and was restricted to occasional balancing, stooping, and the climbing of stairs or ramps, the job numbers would remain unchanged because the postural limitations were "not significant for sedentary jobs" (Tr. 175).   He stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT").

### D.    The ALJ's Decision

On August 17, 2011, ALJ Moore found that Plaintiff had not engaged in substantial gainful activity ("SGA") since December 14, 2004 through the date last insured for DIB of December 31, 2008 (Tr. 21).  Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of "cervical and lumbar degenerative disc disease; lumbar radiculopathy; back disorder; and muscle and ligament disorder" (Tr. 21).  He found however that none of the conditions "met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1," noting in particular that the back condition did not meet "Listing 1.04" (Tr. 21-22).  The ALJ found that while Plaintiff retained the residual functional capacity ("RFC") for a full range of sedentary work, he was unable to perform any of his past relevant work (Tr. 22, 29).

The ALJ cited the treating records showing that Plaintiff obtained good results from physical therapy and pain medication, noting that "Dr. Macy steadily increased his physical therapy program" (Tr. 27).  The ALJ also cited Dr. Colson's recommendation to increase physical therapy, stretching, and physical activity in general (Tr. 27).  The ALJ observed that when Workers' Compensation finally approved spinal surgery in February, 2009, Plaintiff instead opted for "routine, conservative, and reportedly effective physical therapy" (Tr 27).

The ALJ discounted Dr. Macy's disability opinions, noting her own treating notes and  the observation that Plaintiff's condition improved between September, 2006 and November, 2008 stood at odds with her findings (Tr. 28).   The ALJ adopted Dr. Jilhewar's findings in part, but noted that her findings pertaining to upper extremity and

–11–

environmental limitations were not supported by the record (Tr. 28).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.   42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.   1985). Substantial evidence is more than a scintilla but less than a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir.   1986)(en banc).   In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."   *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.   20 C.F.R. §416.920(a).   The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five   to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."   *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.   The Treating Physician Analysis

Plaintiff argues first that the ALJ erred in rejecting Dr. Macy's disability findings. *Plaintiff's Brief* at 5-10, *Docket #11.*   He contends that the ALJ placed exaggerated emphasis on the portions of the treating records supporting the non-disability finding while downplaying or ignoring significant evidence to the contrary.   *Id.*

An opinion of limitation or disability by a treating source is entitled to deference. "[I]f the opinion of the claimant's treating physician is well supported by medically

–13–

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue, 573* F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004). Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.
> *Wilson,* at 544 (citing 20 C.F.R. 404.1527(c)(2-6)).

The failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error.   *Gayheart v. Commisioner of Social Security,* 710 F. 3d 365, 376 (6th Cir. 2013)(citing *Wilson,* at 544-446).   "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6th Cir.2011); § 404.1527(c)(2).   "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart,* at 376 (citing SSR 96-2p, 1996 WL 374188, *5 (1996)).

Plaintiff's contention that the ALJ's treating physician's analysis amounts to a distortion of the treating records is not well taken.  First, Dr. Macy's numerous work

releases cannot be equated to a disability finding by the SSA.  A number of the work releases were accompanied by recommendations to obtain job retraining or find work that did not require heavy lifting (Tr. 221, 226, 228, 230, 294).   Dr. Macy's oft-repeated advice to find less strenuous work does not contradict the ALJ's finding that Plaintiff was capable of sedentary work.   Second, the ALJ did not fail to address Dr. Macy's observations of straight leg raise test results or difficulty arising from a sitting position (Tr. 28).   Rather, he noted that her findings did not include "decreased sensory function or diminished strength" establishing the inability to perform sedentary work (Tr. 28).

The ALJ did not err by noting November, 2008 MRI showing that an L5-S1 disc protrusion   showed improvement from a September, 2006 study (Tr. 26).   As noted at the hearing, none of the MRIs showed the presence of nerve root impingement (Tr. 47). While Plaintiff now cites reports of cervical stiffness (Tr. 221, 223) to support the presence of upper extremity limitations, he denied upper extremity limitations at the hearing (Tr. 53).   The ALJ also rejected allegations of upper extremity weakness on the basis that "the records are devoid of findings of upper extremity weakness, sensory deficits, or other findings supportive of such limitations" (Tr. 28).   As discussed further below, the claim that Plaintiff is unable to perform sedentary work stands at odds with his former counsel's acknowledgment at the hearing that his client was either disabled under the "Listings" at Step Three of the administrative analysis or limited to sedentary work (Tr. 68-71).

Plaintiff points out that the recommendation for fusion surgery by Dr. Thomas and observations by other examining sources support Dr. Macy's findings.  *Plaintiff's Brief* at

8-9.   However, he cites no case or regulation requiring an ALJ to discuss every piece of evidence for and against adopting a treating opinion, assuming that the reasons provided for discounting the opinion are well supported and articulated. The "good reasons" supplied for the rejection of Dr. Macy's opinion are prefaced by a five-page single-spaced discussion of all of the treating records and Plaintiff's activities (Tr.  22-27).   While Plaintiff contends that his decision to decline surgery was unfairly used to discredit Dr. Macy's opinion,   *Plaintiff's Brief* at 9-10,   the ALJ provided an accurate account of Plaintiff's rationale for ultimately declining to undergo fusion surgery (Tr. 24-25). Because the rejection of Dr. Macy's opinions was well supported and well explained, a remand on this basis is not warranted.

## B.   The Credibility Determination

Plaintiff argues that the credibility determination was not supported by substantial evidence.  *Plaintiff's Brief* at 10-14 (citing Tr. 23-29).   On a related note, he argues that the ALJ erred by omitting his sleep disturbances from the interrogatories propounded to the VE.  *Id.* at 29.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.   "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186, *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are

–16–

not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.* [4]

In this argument, Plaintiff revisits the contention that the ALJ placed distorted emphasis on portions of the record supporting the non-disability determination while ignoring evidence supporting the opposite conclusion.    However, as discussed above, the ALJ's finding that Plaintiff obtained good results from physical therapy and pain medication is well supported by Drs. Macy's and Colson's treating records.   While the ALJ acknowledged reports stating that Plaintiff experienced difficulty arising from a sitting position, he also noted Dr. Thomas' findings that Plaintiff exhibited good strength and a normal gait (Tr. 24).   While Plaintiff faults the ALJ for placing undue emphasis on a November, 2008 MRI,  the plain language of the study states that a disc protrusion at L5-S1 had improved since September, 2006,   (Tr. 25, 300-301).

---

[4]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

The ALJ did not err in finding that the March, 2005 MRI of the cervical spine showing moderate effacement of the thecal sac did not support Plaintiff's claims of "debilitating neck pain" or limitations in overhead reaching (Tr. 26, 28, 194, 337).   As noted above, Plaintiff testified at the hearing that he did not experience upper extremity limitations (Tr. 53).

Plaintiff cites SSR 82-59 in support of the contention that his claim was unfairly discredited because he declined to undergo surgery.   *Plaintiff's Brief* at 9-10.   However, the ALJ provided a thorough narrative of Plaintiff's original attempt to obtain surgery and the ultimate rationale declining the fusion procedure, noting that the Plaintiff's decision to decline the surgery was made after he was informed that undergoing the procedure would not allow him to return to his former work (Tr. 24-25).   Read in context, the discussion of Plaintiff's decision was not used to discredit his allegations, but rather,   to illustrate that a significant degree of relief was obtained from conservative treatment.

Likewise, while Plaintiff notes that the cessation of treatment after August, 2009 was attributable to lack of insurance rather than an improvement in his condition, there is no indication that the ALJ used the lack of treatment to discredit his claim.   To the contrary, the ALJ's narrative noted Plaintiff's struggles to obtain medical coverage a total of five times (Tr. 24, 25, 26, 27), at one point referring to the "shenanigans pulled by the Workers' Compensation carrier" (Tr. 27).   Further, the fact that Plaintiff terminated treatment in August, 2009 would have little if any relevance to whether he was disabled on or before December 31, 2008.

–18–

Finally, Plaintiff makes a one-paragraph argument that the ALJ erred by failing to include his sleep disturbances in the hypothetical question posed to the VE. *Plaintiff's Brief* at 14. He is correct that the ALJ did not include sleep disturbances in the hypothetical restrictions posed to the VE. However, Plaintiff's testimony that he experienced sleep disturbances does not imply that the condition created work related limitations (Tr. 57-58). Notably, the hypothetical question posed by Plaintiff's own former counsel to the ALJ did not include a work related limitation resulting from sleep disturbances (Tr. 175). While Plaintiff testified that he reclined during the day, at no time did he allege that he was unable to complete an eight-hour workday due to the need to recline.

Because the ALJ's findings were well supported and comprehensively explained, the administrative findings should not be disturbed. It also bears repeating that Plaintiff's counsel acknowledged at the administrative hearing that his client was capable of sedentary work. While I caution that my recommendation should not be read to trivialize Plaintiff's condition, the ALJ's determination is well within the "zone of choice" accorded the administrative fact-finder and should thus remain undisturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen

(14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.   1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.   1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.   1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.   1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.   The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.   The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 10, 2014            s/R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 11, 2014, electronically and/or by U.S. Mail.

                                    s/Michael Williams
                                    Case Manger to the
                                    Honorable R. Steven Whalen

–20–